Patrick E. Fitzmaurice (PF 8648)
SNR Denton US LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: 212.768.6700
Fax: 212.768.6800
*Attorney for Defendants and Third-Party Plaintiff*

Mark C. Nelson
SNR Denton US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Tel: 214.259.0901
Fax: 214.259.0910
*Attorneys Pro Hac Vice for Defendants and Third-Party Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| AUTOMATED TRANSACTIONS LLC, | : | |
| | : | |
| Plaintiff, | : | 09-CV-09669 (SHS) |
| | : | |
| v. | : | |
| | : | |
| ASTORIA FINANCIAL CORPORATION and, ASTORIA FEDERAL SAVINGS AND LOAN ASSOCIATION, | : : : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------ x

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

Defendant Astoria Federal Savings and Loan Association ("Astoria") moves under Federal Rule of Civil Procedure 56 for summary judgment of non-infringement of all asserted claims of the four Automated Transactions LLC ("ATL") patents-in-suit[1] and submits this Memorandum of Law in Support. There is no infringement because Astoria's automated teller machines ("ATMs") do not connect to the Internet—which is an essential limitation of the patents-in-suit.[2]

## I. INTRODUCTION

This case presents a classic square peg-round hole problem that the Federal Circuit has already resolved: ATL owns patents for ATMs that—as held by the Federal Circuit—must connect to the Internet, but ATL is nonetheless trying to assert those patents against ATMs that do not connect to the Internet. To survive summary judgment, a plaintiff claiming infringement "must present proof that the accused product meets ***each and every*** claim limitation." *J.T. Eaton & Co. v. Atlantic Paste & Glue Co*. 106 F.3d 1563, 1570-71 (Fed. Cir. 1997) (emphasis added); *see also Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co*., 535 U.S. 722, 739-41 (2002) (finding patent-owner bound by statements made during patent application process). Summary judgment is appropriate because—based on recent, controlling Federal Circuit precedent and the undisputed facts of this case—ATL cannot satisfy this requirement as to any of the patents-in-suit as a matter of law.

---

[1] The patents-in-suit are U.S. Patent Nos. 7,575,158 ("the '158 patent"), 7,600,677 ("the '677 patent"), 7,699,220 ("the '220 patent"), and 7,597,248 ("the '248 patent"). Copies of the patents-in-suit are attached as Ex. A to the Declaration of Robert Needham In Support Of Astoria's Motion For Summary Judgment Of Non-Infringement (filed herewith).

[2] ATL has also sought leave to file an Amended Complaint that would add infringement claims on five additional patents, including two patents that were also litigated in *Transaction Holdings*. (Dkt. # 88). As explained in Astoria's brief in opposition (Dkt. # 96), each of those claims also succumb to the same terminal defect as the patents already-in-suit. Namely, and for the same reasons as the patents here, those patents only read on ATMs that connect to the Internet. Accordingly, if added to this case, each of the new claims would also be subject to summary judgment for the same reasons set forth herein.

The patents-in-suit all relate to an apparatus for providing banking services and retail transactions to a consumer through an ATM.  More specifically, they relate to doing so ***over the Internet***.  ATL recently—and unsuccessfully—litigated this exact issue, including two of the same patents that ATL asserts here, in *In re Transaction Holdings Ltd. v. IYG Holding Co.*, Nos. 2011-1361, 2011-1492, 2012 WL 1392647 (Fed. Cir. Apr. 23, 2012).  On April 23, 2012, the Federal Circuit affirmed the Delaware district court's determination that the patents-in-suit in that case[3] require that ATMs connect to the Internet, and that a customer be able to use an ATM to "access services available through the Internet." *Id.* at *4.  The Federal Circuit based its decision on its construction of the term "Internet interface"—which is in three of the four patents asserted here—as well as the common specification that pertains to *all* of the patents-in-suit.  *Id.* The court held that Internet access was the "key" to the claimed invention and that without it, there cannot be infringement.  *Id*. (quoting common specification's recitation of "host of services" ranging from "insurance services" to "floral delivery services" that the invention contemplated would be provided by "Internet access" as "the key to the invention").  Because it was "clear . . . that the claims do not read on ATMs that are connected only to a private network and not to the Internet," the court held that ATMs that do not enable a customer to connect to the Internet cannot infringe ATL's patents.  *Id.*

Based on the Federal Circuit's holding, ATL cannot prove infringement of any of the patents asserted.  There is no genuine issue of material fact whether Astoria's ATMs connect to the Internet.  They do not.  Because the application of the Federal Circuit's holding to ATL's infringement claims in this case is a purely legal determination, Astoria is entitled to judgment as a matter of law.

---

[3] The patents fully litigated in *In re Transaction Holdings Ltd.* were U.S. Patent Nos. 6,945,457 ("the '457 patent"), 7,571,850 ("the '850 patent"), 7,591,420 ("the '420 patent"), 7,575,158 ("the '158 patent"), and 7,600,677 ("the '677 patent").  ATL asserts the '158 and '667 patents in this case as well.

## II. STATEMENT OF ISSUES

Do Astoria's ATMs infringe the patents-in-suit where (1) according to the Federal Circuit, the patents-in-suit can only read on ATMs that connect to the Internet, and (2) Astoria's ATMs have no connection to the Internet?

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. ATL alleges that Astoria's ATMs infringe various claims of the '158, '677, '220, and '248 patents.

2. The '158, '677, '220, and '248 patents are all children of U.S. Patent No. 6,945,457 ("the '457 patent") which was litigated in *Transaction Holdings*, 2012 WL 1392647.

3. The '158 and '677 patents were both previously litigated in *Transaction Holdings*, 2012 WL 1392647.

4. All of the asserted claims of the '158, '677, and '220 contain an "Internet interface" limitation.

5. All of the patents-in-suit, as well as each of the patents litigated in *Transaction Holdings,* share a common specification which provides that "[t]he key to the invention is the multiple functioning of the terminal as compared to primarily single purpose devices of the prior art."

6. In *Transaction Holdings,* the Federal Circuit held that the term "Internet interface" requires Internet access and that claims containing that term do not read on ATMs that are connected only to a private network.

7. The Federal Circuit also held that the common specification confirmed the Internet requirement by providing that the "key to the invention" is its ability to provide "a host of services that the invention contemplated the ATM would be able to provide by virtue of its Internet access."

8. All Astoria ATMs are restricted by an Access Control List that limits the addresses with which Astoria ATMs can communicate. Astoria configures each of its Access Control Lists to limit each ATM to communicate solely over a private network with the Fidelity National Information Services ("FIS") router.

9. All Astoria ATMs are also restricted by fire walls ensure that the servers can only route requests to the FIS router.

10. No one can access the Internet from an Astoria ATM and no one can access an Astoria ATM from the Internet.

## IV. SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is as appropriate in a patent case as in any other." *Avia Group Int'l v. L.A. Gear Co., Inc.,* 853 F.2d 1557, 1561 (Fed. Cir. 1988). The moving party is entitled to summary judgment "if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed. Cir. 2001). "The party opposing the motion cannot rest on the mere allegations or denials of his pleadings, but must 'go beyond the pleadings' and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (citation omitted). Additionally, "[i]n a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion . . . . The mere possibility that a factual dispute may exist, without more, is not sufficient" to survive summary judgment. *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988); *see also Brown v. City of Houston,* 337 F.3d 539, 541

(5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

V.   ARGUMENT

The Federal Circuit's decision in *Transaction Holdings* is determinative in this case. Indeed, ATL litigated two of the four patents that it asserts here in that case, and each of the patents in this case share the same limitations and/or common specification that the Federal Circuit held to be dispositive in that case. Not only as a matter of collateral estoppel, but also as a straightforward application of the facts of this case to the claims asserted, ATL cannot prove infringement, either literally or under the doctrine of equivalents, as a matter of law. Accordingly, summary judgment of non-infringement is proper.

   A.   **ATL Cannot Prove Literal Infringement Because The Federal Circuit's Decision Forecloses Its Claims As A Matter Of Collateral Estoppel.**

"Under federal law, collateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Prudy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003).

ATL had a full and fair opportunity to litigate—and, indeed, **did** fully litigate—**the exact same issue** in *Transaction Holdings* that is now determinative in this case, both in district court and on appeal to the Federal Circuit. The resultant construction was not only "necessary to the judgment of noninfringement in the previous case," *Pfaff v. Wells Elects., Inc.*, 5 F.3d 514, 518 (Fed. Cir. 1993), but was, in fact, dispositive.

### 1. The Federal Circuit's Decision Has Collateral Estoppel Effect In This Case And Holds That None Of The Claims Asserted In This Case Read On ATMs That Do Not Access The Internet.

Consistent with general principles of collateral estoppel as a rule of *issue* preclusion, courts look to the "issues" that were litigated—not the specific patent claims—to determine whether collateral estoppel applies in patent litigation. *Medinol Ltd. v. Guidant Corp.*, 341 F. Supp. 2d 301, 314 (S.D.N.Y. 2004) ("[C]ollateral estoppel may apply to patent claims that were not previously adjudicated, because the ***issues litigated***, ***not the specific claims*** around which the issues were framed, are determinative."). And indeed, "because claims in patents are routinely 'repeated and duplicated, varying one from the other only in certain minor details,' it is unsurprising that each of these 'differently worded claims may present identical issues.'" *Id.* (quoting *Bourns v. United States*, 537 F.2d 486, 491 (Ct. Cl. 1976)). Thus, the fact that it is a different but related patent being litigated does not prevent the application of collateral estoppel. Very recently, one district court explained the application of collateral estoppel to related patents as follows:

> [C]ontrary to [plaintiff's] argument in opposition to [defendant's] motion for summary judgment, the ***collateral estoppel doctrine is not rendered inapplicable simply because [the prior case] involved the '182 patent whereas this case involves the '237 patent.*** Insofar as these two patents are related (the '182 being a continuation of the '237), collateral estoppel can theoretically bar relitigation here of identical issues adjudicated in the case involving the '182 patent.

*Ohio Willow Wood Co. v. ALPS South, LLC*, No. 2:04-CV-1223, 2012 WL 2196083, *8 (S.D. Ohio June 15, 2012) (emphasis added).

The determinative issue in this case is identical to the determinative issue decided in *Transaction Holdings*. Specifically, can an ATM that does not connect to the Internet infringe patents which

(1) are children of the same '457 patent;

> (2) contain the same limitation of an "Internet interface"; and/or
>
> (3) contain the same common specification providing that the "key to the invention" is the provision of multiple functions to be performed over the Internet?

In that case, as here, the answer was no.

For purposes of this case, the Federal Circuit's holding in *Transaction Holdings* is remarkably simple: the '457 patent and its progeny—a category that encompasses all of the patents asserted in this case—can ***only*** be infringed by ATMs that connect to the Internet. Put another way, if an ATM does not connect to the Internet, it cannot infringe ATL's patents. The Federal Circuit based its determination on the term "Internet interface" as used in most of the claims, the common specification, and intrinsic evidence.

Looking first to the term "Internet interface," the Federal Circuit held that "the plain language of the claims and the supporting evidence makes clear that the limitations reciting 'an Internet interface to the automated teller machine,' . . . and 'an Internet interface to an Internet connection,' require that the customer be able to use the ATM to access services available through the Internet." *Transaction Holdings*, 2012 WL 1392647 at *4. As the Federal Circuit explained, "[t]he claims envisage an ATM having Internet access (through an Internet interface) that the customer can use to conduct both banking and other transactions, such as retail transactions." *Id.* That construction was consistent with the intrinsic record that shows that "[d]uring prosecution, the inventor used the term 'Internet interface' interchangeably with 'Internet connection' and 'Internet access.'" *Id.* Likewise, the inventor pointed to the Internet connection as the distinguishing feature of the claims containing the "Internet interface" to overcome a prior art reference. *Id.* ("[T]he inventor argued that the reference in question 'does not teach or suggest the use of an ATM with an Internet connection to conduct retail

transactions,' and that in the prior art device, a customer 'never utilizes an Internet connection to realize a retail transaction.'").

ATL's most recent representations to the PTO on reexamination also relied heavily on Internet access as a distinguishing feature from additional prior art. *Id.* ("In distinguishing a claim with the "Internet interface" limitation from prior art references, ATL argued that one reference "does not teach giving users access to the Internet through the automated teller machine," that another reference contains "no suggestion that an ATM machine connected to the Internet would allow renewal of one's driver's license," and that "nowhere is there any suggestion that a device like an ATM can have its functions expanded to include a multitude of non-banking related retail functions by being connected to the Internet."). Simply put, as the Delaware district court, Federal Circuit, and even apparently the inventor and ATL unanimously agree, the distinguishing feature of the "Internet interface" claim limitation is that it requires Internet access.

The Federal Circuit also properly looked to the common specification—which is shared by *all* of the patents both in that case and here—as further confining the patented invention to only ATMs that connect to the Internet. The Federal Circuit has made it clear that claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc); *see AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 (Fed. Cir. 2005) ("Here, the context of the specification makes clear that the patentee did not intend the term to encompass natural materials."); *Nystrom v. Trex Co.*, 424 F.3d 1136, 1143-45 (Fed. Cir. 2005) (limiting scope of otherwise broad claim term based on statements in specification).

As the Federal Circuit held, the common specification of the patents asserted in this case necessarily limits the claims by emphatically identifying "'[t]he **key to the invention**'" as "'the

multiple functioning of the terminal as compared to primarily single purpose devices of the prior art.'" *Transaction Holdings*, 2012 WL 1392647 at *4 (citing '457 patent, col. 5, ll. 37–40) (emphasis added).  In other words, "the key to the invention" is that the ATM does more than just dispense cash, but instead performs various other functions.  And, according to the Federal Circuit, ***those various other functions are to be accomplished over the Internet***:  "[t]he 'multiple functioning' refers to a host of services that the invention contemplated the ATM would be able to provide by virtue of its Internet access, such as 'insurance services, restaurant services, travel services, . . . floral delivery services, . . . news services, transportation services, utility services, physician services,' and many more." *Id*. (citing '457 patent, col. 3, ll. 31–36).  Thus, as the Federal Circuit explained, the common specification further "confirms that . . . the claims do not read on ATMs that are connected only to a private network and not to the Internet." *Id*.  And again, this construction is consistent with statements by the inventor who, when deposed, testified that "he contemplated that customers could use the ATMs' Internet access to perform such functions as browsing the Web and checking e-mail." *Id*.

The Federal Circuit's holding that these patents can only read on ATMs that connect to Internet is dispositive as to all four of the patents-at-issue in this case.  Indeed, both the '158 and '677 patents were litigated in *Transaction Holdings*.  *See Automated Transactions LLC v. IYG Holding Co*., 768 F. Supp. 2d 727, 732 (D. Del. 2011).  Thus, the Federal Circuit has already spoken directly as to those two patents: they cannot be infringed by ATMs that do not connect to the Internet.  But the Federal Circuit's decision also applies with full force to the other two patents asserted—the '220 and '248 patents.

The '220 patent contains both the same "Internet interface" limitation and common specification as the patents in *Transaction Holdings*.  Specifically, the '220 patent recites the exact same "Internet interface to the automated teller machine" limitation, *see* '220 patent, col. 5,

- 9 -

l. 64, that the Federal Circuit expressly held requires a connection to the Internet. *Transaction Holdings*, 2012 WL 1392647 at *4. There is no means by which ATL can meaningfully distinguish the '220 patent from the other patents in that case that contained the same specification and limitation.

Likewise, while the '248 patent does not have the same "Internet interface" limitation, it is still subject to the same common specification that, according to the Federal Circuit, demonstrates that the invention is only meant to read on ATMs with Internet access. *See* '248 patent, col. 5, l. 46-48. By the clear terms of its common specification, the '248 patent is meant to perform various functions—other than dispense cash—***over the Internet***. For example, the key distinguishing feature that purportedly enabled the patent to overcome prior art is its ability to permit a user to purchase insurance, make restaurant reservations, order gift basket delivery, read the news, partake of dating services, and do various other things by virtue of Internet connectivity. *See* '248 patent, col. 3, l. 42-col. 4, l. 13. As the Federal Circuit recognized, the inventor himself envisioned that—based on the common specification—the patented invention would be used to browse the Web and check email through the ATM. *Transaction Holdings*, 2012 WL 1392647 at *4. This is a critical attribute of the claimed invention that defines the entire point of the invention and thus controls how the otherwise ambiguous limitations of the '248 patent—including the limitation of "network services to financial network connections"—must be construed. *See AquaTex*, 419 F.3d at 1380. And as the Federal Circuit explained, "most of the varied services contemplated by the patent would be unavailable to the ATM if it were connected only to a private network." *Transaction Holdings*, 2012 WL 1392647 at *6. The connection to the Internet is essential.

The bottom-line is that the purported "invention" contemplated by the '248 patent is not an ordinary ATM, but a unique ATM that connects to and provides a diverse array of services

via the Internet. Its claims must be construed consistent with that understanding. Like the other patents-in-suit, the '248 patent can *only* be infringed by an ATM that connects to the Internet.

### 2. None Of Astoria's ATMs Connect To The Internet.

Because the Federal Circuit already determined the scope of ATL's patents, the only question left for this Court to decide is whether Astoria's ATMs connect to the Internet. If Astoria's ATMs do not connect to the Internet—regardless of how they otherwise function— they cannot infringe the patents asserted as a matter of law. ATL thus cannot evade summary judgment merely by claiming that Astoria's ATMs operate differently than those that were at issue in *Transaction Holdings*. It does not matter whether they have different manufacturers, use different private networks, or function in different ways because the Federal Circuit held that to infringe, ATMs must connect to the Internet and so ***all that matters is whether Astoria's ATMs connect to the Internet.*** 2012 WL 1392647 at *4. If not, they cannot infringe as a matter of law.

ATL also cannot evade summary judgment by claiming that some remote part of Astoria's ATM system tangentially touches upon the Internet—which it does not. The Federal Circuit made clear that the Internet connection inquiry is limited to the ATM itself, not whatever system to which the ATM connects. Even though ATL's evidence in *Transaction Holdings* suggested "that some element of the Vcom system may be on the Internet," ATL had failed to produce "any evidence showing that ***the accused Vcom ATMs themselves*** are on the Internet." *Id*. (emphasis added) ("the ATMs themselves were not on the Internet, and a customer could not use one of the defendant's ATMs 'to send data to, or receive data from, any computer outside the private' network that connected the ATM to its designated server"). Because the ATM itself had no connection to the Internet, what the network connected to was irrelevant. *Id*.

Astoria's ATMs do not connect to the Internet. In fact, this case is simpler than *Transaction Holdings* because, as ATL concedes, "[t]he ATMs used by Astoria are not Vcoms

and are not specialized or unique.  ***They are standard ATMs***."  ATL Reply in Support of its Motion to Serve and File Amended Complaint at 2 (Dkt. # 98) (emphasis added).  But as the Federal Circuit concluded and ATL itself has repeatedly argued to overcome prior art, ATL's patents are not for "standard ATMs," but are instead for much more complex machines that provide many more services.  Indeed, ATL does not claim to have invented the "standard ATM."  And far from allowing customers to browse the web, send email, or order flowers, Astoria's ATMs enable only traditional functions like cash withdrawals and deposits—none of which require or use access to the Internet.  None of Astoria's "standard ATMs" connect to or permit a customer to connect to the Internet.  As attested to by the Declaration of Astoria's Senior Manager of Networking and Operations Center Management, John Carey, in support of this motion, Astoria's ATMs are connected only to a private dedicated network.  Carey Decl. ¶ 5.[4]  None of Astoria's 111 ATMs have or provide Internet access.  *Id*. at ¶¶ 5, 11, 12.  Communications both to and from an Astoria ATM are restricted by (1) an Access Control List ("ACL") that limits the IP address with which the ATMs can communicate, and (2) multiple firewalls, that prevent the ATMs from communicating with other private networks and assure that Astoria ATMs' communications are routed only to the FIS Router.  *Id.* at ¶¶ 5, 8, 9.  The firewalls that are connected to the Astoria ATMs are "internal" firewalls that are the first step in the security package designed to prevent unauthorized access to or from another network.  *Id*. at

---

[4] To the extent that ATL may argue that this Court should not accept Mr. Carey's sworn declaration as sufficient summary judgment evidence and may claim that it still needs discovery, ATL's lack of discovery thus far is its own fault.  *See Wells Fargo Bank Northwest, N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("fault or delay on the part of the nonmovant" for lack of discovery is first consideration in whether to grant summary judgment without discovery).  This case has now been pending more than two and a half years, during which time Astoria has failed to seek any discovery at all.  Accordingly, ATL cannot now point to its self-inflicted lack of discovery as a reason to unnecessarily prolong this case.  Based on the Federal Circuit's decision, this case should not be dragged out any further.  To the extent that ATL attempts to do so, it should be noted that Rule 11 obligations to not file frivolous pleadings "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."  *See O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) (quoting the Advisory Committee's notes).

¶ 9. Additionally, Astoria also has "external" firewalls that act as doorways to and from the Internet. *Id.* The Astoria ATMs are not connected to "external" firewalls and thus are not connected or connectable to the Internet. *Id*. Simply put, Astoria's ATMs do not, at any time or in any manner, connect to the Internet. *Id*. at ¶ 12.

Apart from the individual ATMs, Astoria's ATM system also has no connection to the Internet. To be clear, whether some part of the overall system accesses the Internet is irrelevant so long as the ATMs themselves do not. *Transaction Holdings*, 2012 WL 1392647, at *6 (concluding that whether some element of Vcom system may have been on the Internet was irrelevant because ATMs themselves were not). Nevertheless, at no time does Astoria's ATM system connect to the Internet. Instead, communications with an Astoria ATM follow a strict path:

- The private Astoria ATM network routes transaction requests from an ATM to a Branch Switch, then to a Branch Router. *Id*. at ¶ 6.

- The Branch Router routes the request over a private network to what is known as the LS-BranchDist-01 server, which then routes the request to the LS-Core server. *Id.*

- The LS-Core server—as well as the backup DR-Core-01 server—both have firewalls that prevent the servers from routing ATM communications to the Internet, and assure requests are routed *only* to the FIS Router. *Id.* at ¶ 8.

- The FIS Router routes requests to the FIS server, where the request is processed. *Id.* at ¶ 10.

- The result is routed back to the ATM over the same private network, subject to the same safeguards that prevent Internet access. *Id.*

In sum, no aspect of Astoria's ATMs—from the ATMs themselves to the system over which they operate—connects to the Internet. The patents-in-suit—by requiring an "Internet interface" or by containing ambiguous claim terms that must be construed as requiring an Internet connection based on the common specification and the Federal Circuit's holding in *Transaction*

*Holdings*—read only on ATMs that connect to the Internet.  Accordingly, Astoria's ATMs cannot infringe those patents as a matter of law.

### B. ATL Cannot Prove Infringement Under The Doctrine Of Equivalents.

As the Federal Circuit held in *Transaction Holdings*, ATL also cannot prevail under the doctrine of equivalents.  The "all limitations rule" restricts the doctrine of equivalents by preventing its application when doing so would void a claim limitation.  *Carnegie Mellon Univ. v. Hoffmann–La Roche Inc.*, 541 F.3d 1115, 1129 (Fed. Cir. 2008). "In determining whether a finding of infringement under the doctrine of equivalents would vitiate a claim limitation, we must consider the totality of the circumstances of each case and determine whether the alleged equivalent can be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Id.*  Here, the claims expressly require a connection to the Internet.  Omitting that limitation while asserting the doctrine of equivalents would violate the "all limitations rule."

Additionally, as the Federal Circuit also recognized in *Transaction Holdings*, the doctrine of equivalents does not apply because "this is not a case in which the accused products practice a close equivalent of the disputed limitation."  2012 WL 1392647, at *6.  During reexamination, ATL relied on the difference between the Internet and other private networks to distinguish over a prior art reference.  *Id.* at *4.  Having distinguished the invention from others that use networks other than the Internet, ATL cannot now argue that an ATM which—like the Astoria ATMs— connects to a private network is equivalent to one that accesses the Internet.  As the Federal Circuit explained, "[a] connection to a private network is substantially different from a connection to the Internet." *Id.* at *6.  Additionally, "private networks and the Internet also differ dramatically with respect to considerations such as security and simplicity of remote

access.  Accordingly, private networks and the Internet are not equivalents for the purposes of the patents at issue." *Id.*

## CONCLUSION

For the reasons stated above, Astoria respectfully requests that the Court grant summary judgment.

Dated: July 18, 2012

By: */s/ Mark C. Nelson*

Patrick E. Fitzmaurice (PF 8648)
SNR DENTON US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800
Email: patrick.fitzmaurice@snrdenton.com

Mark C. Nelson
Robert J. Needham
SNR DENTON US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Telephone: (214) 259-0901
Facsimile: (214) 259-0910
Email: mark.nelson@snrdenton.com
Email: robert.needham@snrdenton.com

**Attorneys for Astoria Federal Savings and Loan Association**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 18, 2012 I electronically filed the foregoing:

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**

with the Clerk of the Court by using the CM/ECF System which will serve all counsel of record by notice of electronic filing.

By: */s/ Mark C. Nelson*
    Mark C. Nelson