Patrick E. Fitzmaurice (PF 8648)
SNR Denton US LLP
1221 Avenue of the Americas
New York, NY 10020
Tel: 212.768.6700
Fax: 212.768.6800
*Attorney for Defendants and Third-Party Plaintiff*

Mark C. Nelson
SNR Denton US LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201-1858
Tel: 214.259.0901
Fax: 214.259.0910
*Attorneys Pro Hac Vice for Defendants and Third-Party Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

AUTOMATED TRANSACTIONS LLC,  :
                                                 :

               Plaintiff,  :       09-CV-09669 (SHS)

                                        :

     v.  :

ASTORIA FINANCIAL CORPORATION and,  :
ASTORIA FEDERAL SAVINGS AND LOAN  :
ASSOCIATION,  :
                                                :

              Defendant.  :

---------------------------------------------------------- x

## DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR
## <u>SUMMARY JUDGMENT OF NON-INFRINGEMENT</u>

In response to the Motion for Summary Judgment filed by Defendant Astoria Federal Savings and Loan Association ("Astoria"), Automated Transactions LLC ("ATL") relies on meaningless distinctions, hypothetical scenarios, and conjecture to distract the Court from the simplicity of the issues in this case.  The Federal Circuit held that the patents ATL seeks to enforce read only on automated teller machines ("ATMs") that are connected to the Internet.  Astoria's ATMs do not connect to the Internet.  Summary judgment is proper.

## I.       Differences Between Astoria's ATMs And The ATMs At Issue In The Federal Circuit's Decision Are Irrelevant.

ATL first tries to avoid the holding of *In re Transaction Holdings*, 2012 WL 1392647 (Fed. Cir. Apr. 23, 2012) by arguing that Astoria does not use the same Vcom devices that were at issue in that case.  ATL Opp. at 1.  But that is a meaningless distinction.  It does not matter whether the ATMs were made by different manufacturers, use different service providers, or operate over a frame relay or point-to-point network.  *Id*. at 2-3.  The Federal Circuit held that the ATL patents require "that the ATMs have access to retail services publicly availably over the Internet and exclude ATMs that are connected only to private networks."  *Id.,* at *4.  Consequently, ATMs that do not connect to the Internet cannot infringe as a matter of law regardless of who made them or how they otherwise operate.

## II.      It Cannot Be Disputed That Astoria's ATMs Do Not Connect To The Internet.

There is no factual dispute about how Astoria's ATMs actually operate.  Neither ATL nor its putative expert (Dr. Souri) dispute that Astoria's ATMs connect only to a private network (8/23/12 Declaration of John Carey ("Carey Decl."), at ¶ 3) (Dkt. No. 104), or that various safeguards, including internal and external firewalls, prevent Astoria's ATMs from accessing the Internet (Carey Decl., at ¶¶ 5, 9-12).  Instead, ATL proffers arguments that the Delaware District Court and Federal Circuit already rejected to quibble about what the undisputed facts mean.

This Court should also reject those retread arguments.  Tellingly, ATL never claims that

Astoria's ATMs actually *do* access the Internet.  Instead, ATL speculates that Astoria's ATMs *could* access the Internet.  ATL argues, for example, that Astoria's ATMs use TCP/IP protocols to communicate and that those same protocols *can* be also used to communicate over the Internet.  Similarly, ATL argues that Astoria uses hardware (Branch Switches and Branch Routers) that *can* enable Internet access.  (ATL Opp., at 3 and Decl. of Shukri Souri ("Souri Decl.") (Dkt. No. 103)).  But ATL already lost these arguments in its earlier case.  *See Automated Transactions LLC v. IYG Holding Co.*, 768 F. Supp. 2d 727, 738 (D. Del. 2011) (holding that using private network did not infringe ATL patents, even though network was accessible from Internet via VPN gateway and despite use of TCP/IP protocols); *Transaction Holdings*, 2012 WL 1392647, at *5-6 (rejecting ATL arguments that ATMs had Internet access because private network can still be on Internet "so long as network has at least one publicly facing address space").  Those courts rejected ATL's arguments because "the unrebutted evidence shows that the accused . . . ATMs themselves are on a private network, are not connected to the Internet, and do not have public IP addresses."  *Id.* at *5.  Here, the unrebutted evidence shows the same thing:  the Astoria ATMs are only connected to a private network, are not connected to the Internet, and do not have a public IP address.  *See*, *e.g.*, Carey Decl.; Transcript of Deposition of John Carey ("Carey Depo."), 73:15-79:18 (Ex. B to Souri Decl.).

ATL also argues that the existence of firewalls as additional safeguards to *prevent* Internet access somehow demonstrates that the ATMs have Internet access because someone *could* conceivably access Astoria's ATMs over the Internet *if* they had passwords to disable both firewalls in Astoria's network.  ATL Opp. at 3.  But, as the Delaware District Court observed in rejecting ATL's same argument, being technically able to do something in the imaginary scenario that ATL conjures up is a far cry from actually doing it:  "[t]o find otherwise would be the equivalent of saying that the Daytona International Speedway is a part of the public highway

- 2 -

system because one can drive a car onto the racetrack from the street with the permission of the Speedway's owners." *Automated Transactions*, 768 F. Supp. 2d at 738.  Nowhere does ATL demonstrate that anyone ever has or will bypass these firewalls to gain ATM access.

Nor does the inclusion of the declaration of a putative expert save ATL.  Expert opinions "based on speculation or conjecture are . . . inappropriate material for consideration on a motion for summary judgment." *Major League Baseball Prop., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 2007) ("[A]n expert's report is not a talisman against summary judgment.").  ATL's expert reaches his conclusion that Astoria's ATMs have Internet access only by indulging the imagined situation in which someone outside the private network obtains Astoria's firewall passwords and, using those passwords, hacks into Astoria's ATMs via the Internet.  (Souri Decl., at ¶¶ 9, 10).[1]  But ATL's identification of a single, far fetched scenario does not create a question of "fact."  "[E]xpert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all. Both analyses result in pure speculation." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330-31 (5th Cir. 1996).

ATL's criticisms of the declaration of John Carey are also unfounded.  ATL argues that Mr. Carey could not recall "what the definition of Internet was in May, 1996."  ATL Opp., at 5. But what that term meant in 1996 is no longer relevant because the Federal Circuit confirmed the Delaware court's claim construction. *Transaction Holdings*, 2012 WL 1392647, at * 3-4.  The "Internet" is "a public network that is logically linked together by a globally unique address

---

[1] The length to which Dr. Souri will go in attempt to manufacture a fact issue is demonstrated by his reliance on the fact that Astoria personnel have computers at their desks that can request public Internet data.  Souri Decl., at ¶ 9. This fact has nothing to do with Astoria's ATMs.  It is undisputed that Astoria's ATMs are connected to the system via vLAN4 and nothing else at the banking offices is connected to vLAN4 … "they [the ATMs] are logically separated in the switch . . . ."  Carey Depo., at 73:15-74:17.

space." *Automated Transactions*, 768 F. Supp. 2d at 737.[2]  Mr. Carey testified, unequivocally, that—based on that correct definition—Astoria's ATMs **do not** connect to the Internet.  Carey Depo. Tr. 75:2-5.  That testimony is unrebutted.

### III.   All Of The Patents Asserted In This Case Require An Internet Connection.

ATL next tries to distinguish two of its patents—the '248 and '973 patents—as not containing the "Internet interface" limitation and therefore, according to ATL, not requiring an Internet connection.  ATL Opp., at 7.

First, ATL's argument applies **only** to these two patents.  Even if the Court were to fully credit ATL's argument, summary judgment would still be proper as to all other patents in this case which contain the "Internet interface" limitation.

Second, ATL's argument ignores the reasoning of the *Transaction Holdings* decision. While ATL complains that the prosecution history for certain terms in one patent will "in general" not limit the construction of other terms in later patents, ATL Opp., at 9, ATL ignores that different claim language is properly interpreted similarly when the specification or prosecution history so warrants.  *See, e.g.*, *Edwards Lifesciences LLC v. Cook, Inc.*, 582 F.3d 1322, 1328 (Fed. Cir. 2009) (upholding district court's similar interpretation of different terms based on the specification).[3]  The Federal Circuit recognized that the inventions covered by these patents could only overcome prior art by performing "multiple functioning" that could only be achieved through Internet access.  *Transactions Holdings*, 2012 WL 1392647, at *4.  ATL now tries to cast aside this "key" functionality as irrelevant features of the embodiments described in

---

[2] While Astoria uses the Federal Circuit's definition of "Internet" and "Internet interface," ATL's expert selectively culls an alternate description of "Internet" from the Delaware court's opinion.  Souri Decl., at ¶ 3.  Dr. Souri's definition is thus not even relevant to the analysis.

[3] *Amhil Ent. Ltd. v. Wawa, Inc.*, 81 F.3d 1554 (Fed. Cir. 1996) (upholding district court's similar interpretation of different terms based on specification and prosecution disclaimer); *RFID Tracker, Ltd v. Wal-Mart Stores, Inc.*, 342 Fed. Appx. 628, 630 (Fed. Cir. 2009) ("Prosecution disclaimer may arise from an applicant's statements in a parent patent application if the parent application relates to the same subject matter as the claim language at issue.").

- 4 -

the patents, ATL Opp., at 9, but they are the essence of the invention:

> [t]he **key** to the invention is the **multiple functioning** of the terminal as compared to primarily single purpose devices of the prior art." '457 patent, col. 5, ll. 37–40. The "multiple functioning" refers to a host of services that the invention contemplated the ATM would be able to provide **by virtue of its Internet access**, such as "insurance services, restaurant services, travel services, ... floral delivery services, ... transportation services, physician services," and many more. *Id*. at col. 3, ll. 31–36.

*Id*., at *4 (emphasis added).  That ATL terminally disclaimed the '248 and '973 patents over the now invalidated '457 patent (containing the "Internet interface" limitation) further evidences the similarity in claim scope.  *See*, *e.g.*, *Geneva Pharm., Inc. v. Glaxosmithkline PLC,* 349 F.3d 1373, 1378 (Fed. Cir. 2003) ("terminal disclaimer" used when claims in one application are "nearly identical to . . . claims in another" application).  In short, the specification, prosecution history, and the inventor himself establish that these Internet-based features distinguish the so-called inventions from standard ATMs like those used by Astoria, which merely enable traditional and rudimentary banking functions.

## IV.    ATL's Remaining Arguments Are Also Without Merit.

ATL repeatedly complains that it has not had enough time to conduct discovery and that it is too early for summary judgment.  *See* ATL Opp., at 1, 6, 9.  But this case has been pending for more than two and a half years, during which time ATL failed to take any discovery.  ATL's alleged lack of discovery is of its own doing and does not stand in the way of summary judgment.  *See Wells Fargo Bank N.W., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002) ("fault or delay on the part of the nonmovant" for lack of discovery is first consideration in whether to grant summary judgment without discovery).[4]

## CONCLUSION

For the foregoing reasons, Astoria requests that the Court grant summary judgment.

---

[4] Similarly, ATL cannot fall back on the doctrine of equivalents.  Equivalents cannot replace a missing claim element.  *Transactions Holdings*, 2012 WL 1392647, at *6 (rejecting the same argument ATL makes here).

Dated:  September 14, 2012

SNR Denton US LLP

By: /s/ *Mark C. Nelson*

Patrick E. Fitzmaurice (PF 8648)
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone:  (212) 768-6700
Facsimile:   (212) 768-6800
Email:  fitzmaurice@snrdenton.com

Mark C. Nelson
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858
Telephone:  (214) 259-0901
Facsimile:   (214) 259-0910
Email:  mcnelson@snrdenton.com

**Attorneys for Astoria Federal Savings and
Loan Association**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 14, 2012 I electronically filed the foregoing:

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT OF NON-INFRINGEMENT**

with the Clerk of the Court by using the CM/ECF System which will serve all counsel of record

by notice of electronic filing.

By: /s/ *Mark C. Nelson*
Mark C. Nelson

15017066\V-2